Good morning. I'm Howard Price. I represent the appellant in this case, and we're asking the court to reverse the grant to summary judgment in this case. I believe that between all of the briefs filed, I hope that the court will agree that one is a very fact-intensive issue, always is, on summary judgment appeals. I think between the briefs, the facts are well before the court. I intend to reserve the bulk of my time to answer any questions concerning those facts. Initially, unless the court has some questions, I just want to emphasize a few things. I'd like to ask something. Even if you assume, arguendo, that the police officers did not have probable cause for the arrest, as long as they were reasonably mistaken, there's qualified immunity, is there not? If you conclude that they are reasonably mistaken, yes. And what is it in their conduct that you believe show that they were not, at the most, reasonably mistaken? Because it was a precipitous, mindless arrest. I've said that in the brief. And the reason I say that is they did no investigation whatsoever, and they accepted, at face value, things that were unreasonable and incomprehensible. Well, wait a minute. Here you had the people whose home was, or faux home, I suggest, that were being searched. He admitted that he had perhaps touched things in the closet. These folks admitted that they were there improperly, taking advantage of the school district. So they had at least the word of your client that he was near the closet, and you had these people who had recanted their previous falsehood and said, hey, you know, you're right, we're not supposed to be here. So why is that an unreasonable thing for these police officers, at least based upon that, to say that this was, at most, a mistaken lack of probable cause, rather than some kind of deep scienter of a kind that would bring them within the scope of your lawsuit? May I respectfully correct the Court? The appellate did not agree, did not admit that he touched anything other than the refrigerator. The record is very clear about that. He said he looked at the closet and denied touching it. The point here, in response to the Court's question, is it was unreasonable not to engage in further investigation. Let me just correct you again. Based upon the supplemental lecture to the record, page 171, paragraph 2, he said, I don't think I touched anything. Then he changed his story to admit to touching the refrigerator and, in quotes, maybe the closet door. Isn't that what the record shows? If the Court reads that, obviously you read it correctly. But that in and of itself, given his duties, given everything else in the case, in totality, it was unreasonable to accept this. Well, again, we're not saying he was unreasonable to do that. We're simply saying that were the police officers in this instance, again, I'm not saying that they didn't have probable cause, but if they didn't, it's a close question on that, but if they didn't, as long as they were reasonably mistaken and based upon these two things, how could they be reasonably, anything more than reasonably mistaken about probable cause? Because I think you are unfairly isolating coincidence and ignoring all of the other exculpatory and almost ludicrous portion of the accusation. Here you have a case where the alleged burglar identifies himself. In other words, leaves information so that he could be identified. And the alleged victim gives his business card to the alleged burglar. It's happening on Wall Street right now. Well, we're still here in Los Angeles, and I apologize that Los Angeles smells like a barbecue. But the point is, as we are required, as the appellees have argued, taking the totality of the circumstances, you cannot really isolate any one factor. But I think there are some that just leap out that would make any reasonable police officer pause before jumping the gun and arresting almost a fellow investigator. Here is somebody who they knew, who denied it. He was cooperative. He did everything that a reasonable person would do to explain his innocence. And what we have here, frankly, is, I think, an excellent opportunity for the Ninth Circuit to maybe further clarify what I think, in all due respect, is somewhat murky area in the circuit law, and that is those cases that involve a further duty to investigate. Well, you see, the problem is I don't understand when you say further duty to investigate. If they had arrested Reed after Blackburn made his report of the theft, sure, it would be easy to say he should have investigated further. They talked to Reed. He collaborated the key facts on which probable cause could turn, and that is, yes, I was there, and yes, I was in the closet. So I was at the scene, and I had the opportunity to take the cash. And they talked to his boss, who cooperated the fact that, yes, Reed was there. So they did investigate. They knew that the Blackburns were frauds. They also knew that they were up front about being a fraud with them. So isn't that just sort of up to the police in general to make a reasonable inference from this? It's so unlike the cases in front of which you rely, where there was a failure to talk to the victim, where there was a failure to look at a TRO. Your Honor, please, if a police officer entered a home, and later on the homeowner accused the police officer of stealing $3,200, and the police officer said, yes, I was there, and I did touch the area, but I didn't take it, would that be sufficient probable cause? Well, it might be. Well, it shouldn't be. Isn't that sort of up to the police officers? They're there on the scene, and they're making an effect. They're drawing inferences from what they've been told. The fact that he's a police officer isn't going to immunize him. He could have taken it, even if he's there on a very official visit. The inferences that should have been drawn were suspicious of the integrity of the allegation. Here you have a locked residence, and nobody had been there the night before, supposedly entered without any evidence of a forced entry. The burglar gives his identification, so to speak, to the victim. The victim gives his card. No fingerprints were taken. Why would anybody keep $3,200 in cash to pay rent in Beverly Hills? The landlord was known. They could have asked, does he pay cash? There were a lot of things that could have been done here that should have been done. There was no exigency to have arrested him. All the cases I think we cited are in support of the fact that they should have taken their time here. There was no exigency. He was cooperative. He was coming down to see Detective Green. From his point of view, he was cooperative, but he did qualify the cooperation. By saying, I can't come down, but I'll come down shortly. That's what he said. That's all it was. And they knew him. They'd known him for 11 years. This is not a stranger to suspect. You and I might not have made the same judgment. I mean, I think the question is, was it so unreasonable under clearly established law that they are not entitled to immunity? To uphold this as being reasonable and probable cause sets a very dangerous precedent for public officials and public employees who go into other people's homes and then be accused of stealing something, and all they can do is to say, yes, I was there. I was sent there. And that's all that was cooperated in this case. In other words, Mr. Hansen said, yes, I did ask him to go there, but I sent him to go there immediately. And that contradicted for purposes of summary judgment. We're here on summary judgment. We all recognize that, of course, that the adverse inferences that should have been drawn were not drawn, and the favorable inferences that were drawn should not have been drawn. And that's what's really the issue before the court, is whether the district court approached the matter correctly. We're not here after a final agreement. Can I ask you before your time runs out? I know how you're going to conclude that sentence. That's why I interrupt. He was arraigned, wasn't he, before a judge? No, Your Honor. No charges were filed. No, no, I didn't ask about the charge. He was apparently in jail for a month. No, he wasn't. I thought. No, no. What happened, Your Honor? I thought I read that. I think, with all due respect, Mr. Kroek. He was arrested. He eventually bailed out. He waited in anguish for a month, at which time the district attorney rejected the charges and had a. . . So how long was. . . Don't you normally, when you're arrested, have to be brought before a judge within the city of Riverside, 48 hours? I think it's true in New York. It's not here. Here you have a right to bail out before your arraignment. So he was never arraigned before a judge. He was never arraigned because no charges were filed. He never did any. . . He never served any time in jail. He did serve some time in jail before bailing out. Okay. Did that answer your question? Yeah. Let me reserve whatever I have left, Your Honor, for further debate. Over the top. Already? Thank you, Mr. Price. Your time is like the bailout. There's nothing with which to pay it. Can I just have one second? I know you're facetious. There is justice in the Ninth Circuit. Okay. Good morning, Your Honors. May it please the Court. Lois Bobat for appellees. There are just a couple of issues that I'd like to address with the Court. The first, although it wasn't raised by Mr. Price as the standard of review, the appellant had argued in his brief and in his reply brief that if there are disputes regarding the inferences that can be drawn from the underlying facts, historical facts, that that defeats summary judgment. And the Ninth Circuit law on that is very clear and very contrary to the position taken by appellant in Pengvi Penghu and Hart v. Parks, the court. Well, here's the real problem in this case. I mean, you've got a situation where a guy who is basically an admitted fraud waits four hours to report to the police that he had $3,200 in cash under a shirt in an unused apartment stolen by the inspector who was there on business and with whom he had an exchange because they exchanged business cards. He asked for a business card from the robber, which makes no sense, and he got the robber's business card. And the read was cooperative with qualifications, but it wasn't uncooperative. He was cooperative. And there was no hurry. So if you add all that up, you have to agree, I would think, that probable cause is iffy. I think that there was probable cause in this case, Your Honor. I think that certainly there could have been additional facts that would have strengthened probable cause. But that doesn't mean that probable cause didn't exist in this case. Well, I agree with that in the abstract. But on the scenario that I just ran through, why do you think there was probable cause? Because the police had a report of a residential burglary. They went to the resident. The Blackburns were very straightforward about the fact that they had a dispute with the school district. They were very upfront about the fact that Mrs. Blackburn didn't live in the apartment. It's very obvious that the apartment was sparsely furnished, but the officers have seen sparsely furnished apartments in Beverly Hills in the past. One of the officers testified that people will do anything to get a Beverly Hills address so that they can send their kids to the Beverly Hills School District. So that wasn't something that was out of the norm, that somebody might be setting up an apartment in order to get their kids into the Beverly Hills School District. And there wasn't any indication that the Blackburns were lying to the officers about that dispute. Mr. Hansen confirmed that Mr. Reed had, in fact, been sent to the apartment. Mr. Reed confirmed that he had been in the apartment. He confirmed that he had looked in the closet where the money was purportedly hidden. The fact that Mr. Blackburn waited a couple of hours before calling the police, he explained that by indicating that he wanted to go down and talk to Mr. Hansen and make sure that in fact this was somebody that had been sent by the district. The fact that Mr. Reed was an investigator with the school district and had been sent there by Hansen unfortunately does not negate the fact that there could have been a theft. Unfortunately, people in a position of authority sometimes commit crimes. And the police had the right to reject Reed's statement that he had not committed the crime. There's case law that says that police don't have to believe someone when they say they didn't commit the crime. Let me just, following up on Judge Reimer's question, wouldn't you agree that this was at best a close call on the probable cause? I think it was a close call, but I think probable cause is better. I understand you're not conceding probable cause, but if it's a close call, what then is the standard that we are to apply in terms of qualified immunity here? Qualified immunity applies to protect police officers who are doing their jobs unless they are plainly incompetent or intentionally violate the law. And there is no question in this case, there's no evidence whatsoever that they intentionally violated the law. Do you have a case that you can cite to us that embodies that standard? Yes, Your Honor. Saussure v. Katz, U.S. Supreme Court, 2001, 533 U.S. 194, page 210. Well, Saussure is your authority, then? Yes. Okay. And there are Ninth Circuit cases that follow that. Like Mendocino Environmental Center? That case I'm not familiar with, Your Honor, but Pang v. Katz. Pang, who was also a qualified immunity case arising out of probable cause for an arrest, and in Pang the Court said that even if the officer was mistaken about the existence of probable cause, he's entitled to some type of immunity. Whose burden of proof is it to show, following Saussure, which I read to say that the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right? If we take that as the standard, whose burden is it? Is it your counterparts here to show that the officer did that, or is it the city's obligation to refute some kind of a presumption? I believe that the burden would rest with the appellant to show that an officer is not entitled to qualified immunity. And I apologize, Your Honor, I don't have any, I don't, I haven't researched that issue, and I don't have a case that stands for that proposition. But in this case, the officers knew when they arrested Mr. Reid, in terms of speaking now directly to the qualified immunity question, they knew that they didn't, an officer doesn't have to have probable cause for all of the elements of the crime. They don't have to have proof that a crime was actually committed. The issue here is not whether or not Mr. Reid committed residential burglary. The issue is simply whether the police had probable cause to believe that he might have committed residential burglary. And based on all of the circumstances that they were confronted with that evening or that afternoon, including the fact that Reid appeared to the police to be nervous – I know that Mr. Reid said he wasn't nervous, but the police didn't know how he subjectively felt. They just knew what his objective manifestations were. He appeared to the police to be nervous. He indicated that he would allow the police to search his house, but only after he had an opportunity to go into the house first by himself. He indicated that he would go down to the police station, but later that he couldn't go down immediately. Those facts give rise to a reasonable inference that Mr. Reid wanted time alone. Why? Well, perhaps the officers could have, could objectively and reasonably have concluded that he wanted to hide the money somewhere or he wanted to get rid of the money somehow. Those facts actually support the exigent circumstance in making an immediate arrest so that Mr. Reid was removed from the circumstances where he could have hidden the money if it was in his house or if it was in his office at school. They didn't actually go to the house, though, except on the terms offered by Mr. Reid. Is that correct? They did not go to the house. They were at the house. They were outside of the house. I'm talking about his own residence. They were outside of Mr. Reid's residence. They went over to his residence to see if he was there. He was not there when the police initially arrived, but he came as they were leaving, and so they talked to him on the street and they said, can we go look in the house? And he said, yeah, but let me go in first. I've got a dog, a big dog that I've got to put up. The officers could reasonably have interpreted that as a request by Mr. Reid to go into his house to hide something or to do something with the money. With that, if there are no other questions, I will. Can I just follow up on one quick question? Yes. I just want to understand what happens when someone is arrested. They just go to a police station and they self-bail. I mean, no judge looks at the case at all. Is that right? I'm not familiar with that process, Your Honor. There are a number of things that might happen when somebody goes to a police station. They are booked. They go through the booking process. In some cases, they're cited and released. But apparently in this case, Mr. Reid was given the opportunity to post bail before he had an arraignment, and so there was no arraignment. The matter then was just forwarded to the district attorney. The district attorney reviews the record to determine whether or not charges would be filed. Who decides on the bail, on the amount of the bail? I don't know that, Your Honor. Sorry that I can't be of more help. Okay. Thank you, counsel. Thank you. The matter just argued will be submitted. And we'll next hear argument in Naruse v. Charter Communications. Thank you.
judges: Rymer, Smith, Korman